**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Cynthia TORRES, Defendant–Appellee.**

**No. 116, Docket 91–1204.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 24, 1991.

Decided Nov. 20, 1991.

Thomas S. Duszkiewicz, Asst. U.S. Atty., Buffalo, N.Y. (Dennis C. Vacco, U.S. Atty. W.D. New York, of counsel), for plaintiff-appellant.

Daniel J. Henry, Jr., Hamburg, N.Y., for defendant-appellee.

Before LUMBARD, WINTER, and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

The government brings this interlocutory appeal from an order of the District Court for the Western District of New York, John T. Elfvin, *Judge*, which suppressed evidence of 2.5 grams of heroin discovered in a shoulder bag in the possession of defendant Cynthia Torres after she disembarked from an overnight express bus from New York City. We reverse.

Undisputed testimony at the suppression hearing established the following facts:

Because law enforcement agents have found the overnight express bus from New York City to be a means of transporting illegal drugs to the Buffalo area, they regularly patrol the bus terminal. On September 27, 1990, Senior U.S. Border Patrol Agent Daniel F. Allman and Erie County Deputy Sheriff Paul J. Terranova saw Torres get off the bus after its arrival at 7:15 a.m. She was carrying only a small, black shoulder bag and appeared to be travelling alone. She did not claim any checked baggage and seemed to be nervous.

Torres approached Allman, who was dressed in plain clothes, and asked him where she might find a cab. Torres spoke with an accent, which aroused Allman's suspicions about her immigration status, and he asked her about her citizenship. Torres said she was a citizen of the United States living in Buffalo and gave the date and place of her birth. She could not, however, produce any identification.

When Torres informed Allman that she was coming from New York City after spending only one day there, Terranova identified himself as a Drug Enforcement Agent and asked Torres whether she was carrying narcotics. She answered that she was not, but added that she did not know what was in the shoulder bag, that the bag was given to her by her mother, and that she was told not to look into it.

The agents then asked Torres if she would agree to accompany them to a Transit Police Office a few feet away for further questioning about both her citizenship and the bag. She consented. While Allman attempted to verify Torres's immigration status, Terranova asked whether he could inspect the shoulder bag. Torres responded that "he could look into the bag, that it wasn't her bag, she didn't care." When asked whether she consented to a search, Torres said "it's not my bag, you can search it if you want to." During their inspection, the agents found 5 paper bags wrapped in cellophane, each containing 10 translucent envelopes of heroin; they then arrested Torres.

On October 3, 1990, a grand jury returned a two-count indictment. The first count charged Torres with possessing with intent to distribute approximately 2.5 grams of a substance containing heroin in violation of 21 U.S.C. § 841(a)(1). The second count charged her with conspiracy to possess with intent to distribute approximately 2.5 grams of a substance containing heroin in violation of 21 U.S.C. § 846.

Torres pleaded not guilty and moved to suppress the heroin. Judge Elfvin held a hearing on the issue of suppression, at which Torres chose not to testify. In his Memorandum and Order, he found that there was no possibility of a police stop because Torres initiated contact with the officers. He also noted that Torres disclaimed both ownership of the shoulder bag and knowledge of its contents. In addition, Judge Elfvin wrote that Allman "had a legitimate interest in the possibility that [Torres] might be one who was in this country illegally," which justified further investigation.

After expressing concern about inconsistencies in the officers' testimony at the hearing, Judge Elfvin granted Torres's motion to suppress the evidence for two reasons. First, he held that a seizure took place at some point during the questioning. Second, he ruled that the seizure was unjustified because he believed the officers' investigation into Torres's immigration status was merely a ploy to continue questioning her about narcotics. Pursuant to 18 U.S.C. § 3731 (1988), the government promptly appealed.

## I. *Seizure of Torres*

The district court's findings regarding the alleged seizure closely resemble those reviewed in our recent decision in *United States v. Springer*, 946 F.2d 1012 (2d Cir.1991). Like Cynthia Torres, Asim Springer arrived in the Buffalo terminal on the overnight express bus from New York City, appeared nervous, consented to initial questioning, produced only unreliable personal identification, denied ownership of

luggage, and agreed to move to the police office for further investigation of the situation. *Springer*, at 1013–15. We reversed the order suppressing evidence of cocaine because we found that no seizure took place either when the government agent approached Springer or when he asked him to step away from the curb. *Springer*, at 1016. The police conduct in the present case is no more coercive, intimidating or threatening than that in *Springer*. Moreover, we do not believe that a law enforcement agent's request to step inside a police office without more transforms an otherwise consensual encounter into a fourth amendment seizure. *Cf. United States v. Lee*, 916 F.2d 814–819 (2d Cir.1990) (enumerating factors which might suggest seizure and holding that presence of one factor alone does not implicate fourth amendment).

█ Both Torres's brief and Judge Elfvin's memorandum suggest that the law enforcement agents' use of a drug courier profile was improper because the profile did not narrowly target individuals for questioning. The Supreme Court has held, however, that drug courier profiles are clearly a lawful starting point for police investigations. *See United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion). Thus, even if a seizure had been necessary in this case, the defendant's demeanor, obvious nervousness, lack of identification, short duration of stay, failure to carry luggage beyond a shoulder bag, and voluntary statements about the bag's contents could have provided reasonable suspicion to investigate, to question, and to detain her.

## II. Standing After Disclaimer of Property

█ Though the district court did not reach the issue, Torres's lack of standing to assert a privacy interest in the contents of the shoulder bag after she disclaimed ownership constitutes an independent ground for reversal of the suppression order. We are well aware that under some circumstances a challenge to standing may be waived if the government fails to raise it. *Steagald v. United States*, 451 U.S. 204, 209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38 (1981); *United States v. Garcia*, 882 F.2d 699, 701–02 (2d Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Persico*, 832 F.2d 705, 714–15 n. 2 (2d Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 1996, 100 L.Ed.2d 227 (1988). In this case, however, the government did challenge Torres's standing to assert a privacy interest after "abandoning" the shoulder bag. Though the facts support an inference of disclaimer rather than abandonment, the fundamental challenge to standing was clearly preserved.

█ It is well settled that an otherwise legitimate privacy interest may be lost by disclaiming or abandoning property, especially when actions or statements disavow any expectation of privacy. *See, e.g., Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (abandoned property); *Springer*, at 1017; *United States v. Frazier*, 936 F.2d 262 (6th Cir. 1991) (disclaimed bag); *United States v. Ruiz*, 935 F.2d 982 (8th Cir.1991) (disclaimed suitcases not in possession); *United States v. Sweeting*, 933 F.2d 962 (11th Cir.1991) (disclaimed weapons in mother's house); *United States v. Lee*, 916 F.2d 814 (2d Cir.1990) (abandoned bag); *United States v. Monie*, 907 F.2d 793 (8th Cir.1990) (disclaimed suitcases in defendant's possession). Neither possession nor ownership of property establishes a legitimate expectation of privacy unless the party vigilantly protects the right to exclude others. *United States v. Salvucci*, 448 U.S. 83, 90–93, 100 S.Ct. 2547, 2552–54, 65 L.Ed.2d 619 (1980); *United States v. Rahme*, 813 F.2d 31, 34–35 (2d Cir.1987).

█ Torres made repeated statements that the shoulder bag did not belong to her but to her mother. She also disclaimed any knowledge of its contents and expressed indifference about the exclusion of others when asked for consent to a search. Thus, she lacked standing to assert a protected privacy interest. *Cf. Rahme*, 813 F.2d at

34–35 (affirming judgment that defendant lacked standing to challenge search of bags left room for which rent was overdue).

Reversed.