# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 3, 2001 Session

## STATE OF TENNESSEE v. PETER ALLEN ROSS

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Hardin County**
**No. 7757      Hon. Charles C. McGinley, Judge**

---

### No. W1999-00972-SC-R11-CD - Filed July 9, 2001

---

The appellant was convicted of possession of a controlled substance and drug paraphernalia with intent to sell after officers discovered 53.5 grams of cocaine in his motel room. Prior to trial, he challenged the search of his motel room under the federal and state Constitutions, but the trial court denied his motion to suppress, finding that he possessed no reasonable expectation of privacy in the room after he disclaimed ownership of the room key. Following his conviction, the appellant urged the trial court to consider as a mitigating factor that his conduct did not cause or threaten serious bodily injury, but the trial court disagreed and sentenced the appellant to serve the maximum term in the range. The Court of Criminal Appeals affirmed the convictions and the sentences, and we granted permission to appeal. Based on our review of the record and applicable legal authorities, we agree that the appellant relinquished his otherwise legitimate expectation of privacy in his motel room by disclaiming ownership of the key and by asserting that it belonged to another person. We also conclude that the evidence is sufficient to support the convictions on both charges. Finally, although the trial court should have considered the mitigating factor in Tennessee Code Annotated section 40-35-113(1), we conclude that the maximum sentence in the Range is nevertheless appropriate. The judgment of the Court of Criminal Appeals is affirmed.

### Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Criminal Appeals Affirmed

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, and JANICE M. HOLDER, JJ., joined. ADOLPHO A. BIRCH, JR., J., filed a dissenting opinion.

Richard W. DeBerry, Assistant Public Defender, Camden, Tennessee, for the appellant, Peter Allen Ross.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

# OPINION

# BACKGROUND

On August 31, 1998, two officers with the Savannah Police Department accompanied a person to Shaw's Motel to recover stolen checks in her possession. Upon arriving at the motel, the suspect informed the officers that she was staying in room 121. The officers knocked on the door to that room, and when it was finally opened, the officers detected the smell of marijuana and found four people inside the room, including the appellant, Peter Allen Ross.

The officers then asked everyone to leave the room and to empty their pockets. When the appellant came outside, the officers told him to remove his shoes. As he did so, he removed a key to room 132 from his sock and kept it in the palm of his hand. One of the officers noticed that the appellant had something in his hand, and when the officers discovered that it was another room key, they asked the appellant whether the key belonged to him. The appellant denied that the key was his, and he instead claimed that it belonged to another occupant of the room, Ms. Safon Black. When the officer asked Ms. Black whether the key belonged to her, she also denied ownership, but she told the officers that they were nevertheless free to search anything that belonged to her.

Another officer soon arrived with a drug dog, and the officers searched room 121, finding only a small amount of marijuana behind the dresser. However, when the officers next took the dog to room 132, they discovered 53.5 grams of cocaine base, more commonly known as crack cocaine, in a night stand drawer.[1] The officers also found a set of electronic scales, a roll of plastic sandwich bags, and several items bearing the appellant's name, including his wallet, two car titles, and a receipt dated August 28. Later investigation revealed that room 132 was registered to the appellant.

On November 23, 1998, the Hardin County Grand Jury indicted the appellant with one count of possession of more than 0.5 grams of cocaine base with intent to manufacture, deliver, or sell, and with one count of possession of drug paraphernalia. Prior to trial, the appellant filed a motion to suppress the search of his motel room, claiming that the officers possessed neither a warrant nor probable cause to believe that illegal items were present in room 132. In denying the motion, the court found that the appellant had disclaimed any ownership or interest in room 132 before the search, and that therefore, he lacked any legitimate expectation of privacy in the room. Consequently, the trial court held that the appellant's Fourth Amendment rights were not violated by the search.

---

[1] To put this amount in perspective, the quantity of cocaine found by officers from room 132 was more than 100 times the minimum amount needed to charge the defendant with a Class B felony. See Tenn. Code Ann. § 39-17-417(c)(1) (1997). One of the officers later testified that this was the most cocaine he had ever seen at one time.

On April 21, 1999, a jury found the appellant guilty as charged on both counts of the indictment. At the sentencing hearing, the trial court found that the following three enhancement factors applied to increase the length of his sentence: (1) that the appellant has a previous history of criminal behavior; (2) that the appellant has previously failed to comply with conditions of probation; and (3) that the appellant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed as an adult. The appellant argued that one mitigating factor also applied: that his criminal conduct neither caused nor threatened serious bodily injury. The trial court disagreed, however, finding that a threat of serious bodily injury was present because crack cocaine "is an inherently addictive and dangerous substance that [the appellant] had in his possession in a very significant quantity." The trial court then sentenced the appellant, as a Range I standard offender, to serve twelve years for the controlled substances conviction, the maximum sentence available for a Class B felony, and to serve a concurrent sentence of eleven months, twenty-nine days for the drug paraphernalia conviction.

On appeal to the Court of Criminal Appeals, the appellant argued that (1) the search of room 132 was in violation of the federal and state Constitutions; (2) the evidence was insufficient to support a finding beyond a reasonable doubt that he possessed the items seized in room 132; and (3) the trial court erred in imposing the maximum sentence in the range for his offense by failing to consider the specified mitigating factor. With respect to the lawfulness of the search, the Court of Criminal Appeals upheld the denial of the motion to suppress, finding that the appellant's disclaimer of the motel room key operated as a disclaimer of any legitimate expectation of privacy in the room searched. Although the appellant argued that the purported disclaimer was only of the key and not of the room itself, the intermediate court held that this distinction was not "reasonable under the facts," and that "[b]y disclaiming the key, the [appellant] disclaimed his connection to the room." The Court of Criminal Appeals also found that the evidence was sufficient to support the appellant's convictions and that the sentence was appropriate.

The appellant then requested, and we granted, permission to appeal to this Court on the three issues addressed by the Court of Criminal Appeals. For the reasons discussed below, we affirm the judgment of the intermediate court.

## SUPPRESSION OF EVIDENCE

The appellant first argues that the trial court erred in denying his motion to suppress the search of his motel room. More specifically, he claims that because the officers possessed neither a warrant nor probable cause to believe that illegal items were present in room 132, the search was in violation of the federal and state Constitutions. In response, the State argues that any legitimate expectation of privacy that the appellant may have possessed in the motel room disappeared when he disclaimed any interest in the key to the room. We agree with the State.

When reviewing a trial court's findings of fact and conclusions of law in ruling upon a motion to suppress evidence, we are guided by the now familiar standard of review set forth in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a

suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23. In reviewing these factual findings, we are mindful that "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id.; see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000). As such, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" See State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). Our review of a trial court's application of law to the facts, however, is conducted under a *de novo* standard of review. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999).

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Article I, section 7 of the Tennessee Constitution similarly prohibits unreasonable searches and seizures, and we have long held that this provision is identical in intent and purpose with the Fourth Amendment. See, e.g., State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000); State v. Vineyard, 958 S.W.2d 730, 733 (Tenn. 1997). As we stated in State v. Downey, "[t]he essence of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials,'" 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)), and consequently, the state and federal constitutional protections "are implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen," State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000).

It is well settled that the Fourth Amendment's procedural safeguards do not apply to police investigative activities unless those activities constitute a "search" within the meaning of the Fourth Amendment. See Illinois v. Andreas, 463 U.S. 765, 771 (1983). Since Katz v. United States, 389 U.S. 347 (1967), the Supreme Court has declined to define the term "search" in a literal fashion, and it has instead chosen to define a search as an invasion of a reasonable or legitimate expectation of privacy. See id. at 351; Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); see also State v. Roode, 643 S.W.2d 651, 652-53 (Tenn. 1982). As a result, "an investigation by governmental authorities which is not a search as defined by the Supreme Court may be conducted without probable cause, reasonable suspicion or a search warrant." State v. Bell, 832 S.W.2d 583, 589-90 (Tenn. Crim. App. 1991).

The United States Supreme Court has often held that the "rights assured by the Fourth Amendment are personal rights, and that they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." Simmons v. United States, 390 U.S. 377, 389 (1968). This view was refined in Rakas v. Illinois, 439 U.S. 128 (1975), and United States v. Salvucci, 448 U.S. 83 (1980), to make clear that the focus of the inquiry should be placed "on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." Rakas, 439 U.S. at 138-39. Accordingly, when evaluating whether a particular defendant's Fourth Amendment rights

have been violated, we look to two inquiries: (1) whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," Katz, 389 U.S. at 361 (Harlan, J., concurring); see also, e.g., Bond v. United States, 529 U.S. 334, 338 (2000); and (2) whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,'" Katz, 389 U.S. at 361 (Harlan, J., concurring); see also, e.g., Bond, 529 U.S. at 338.[2]

Taking the second inquiry first, it can hardly be denied that if the appellant manifested an actual expectation of privacy in his rented motel room, then this expectation would be one that society recognizes as legitimate and reasonable. At least since 1964, the United States Supreme Court has recognized that the Fourth Amendment privacy protections surrounding one's home are extended to cover hotel rooms and other temporary living spaces. See Stoner v. California, 376 U.S. 483, 490 (1964). Although no case from this Court has recognized an expectation of privacy in hotel or motel rooms, every federal circuit has found that such an interest exists in these places.[3] Accordingly, we conclude that a true manifestation of privacy in a hotel or motel room is one that society would recognize as legitimate and reasonable.

The genuine issue, therefore, is whether the appellant "exhibited an actual (subjective) expectation of privacy," or whether, in the words of Bond, he has shown that "he sought to preserve something as private." See 529 U.S. at 338. Actual ownership or possession of the place or thing searched is alone insufficient to manifest a subjective expectation of privacy, Salvucci, 448 U.S. at 91; Rawlings v. Kentucky, 448 U.S. 98, 105 (1980), and courts often look to a variety of factors to determine whether an "individual legitimately may claim under the Fourth Amendment that a place should be free of government intrusion not authorized by warrant," Oliver v. United States, 466 U.S. 170, 177-78 (1984). Although this Court has yet to recognize a comprehensive list of specific factors relevant to such an inquiry, the Court of Criminal Appeals has analyzed similar issues using the following seven factor test developed from United States v. Haydel, 649 F.2d 1152, 1154-55 (5th Cir. 1981):

> (1) [whether the defendant owns the property seized]; (2) whether the defendant has a possessory interest in the thing seized; (3) whether the defendant has a possessory interest in the place searched; (4) whether he has the right to exclude others from that place; (5) whether he has exhibited a subjective expectation that the place would

---

[2] While Justice Harlan's formulation in Katz has become the classic formulation of the test, the Katz majority phrased the first inquiry as whether the individual has shown that "he seeks to preserve [something] as private," Katz, 389 U.S. at 351, and it phrased the second inquiry as whether the individual's expectation, viewed objectively, is "justifiable" under the circumstances, id. at 353. See also Smith v. Maryland, 442 U.S. 735, 740 (1979).

[3] See, e.g., United States v. Baldacchino, 762 F.2d 170, 175-76 (1st Cir. 1985); United States v. Mankani, 738 F.2d 538, 544 (2d Cir. 1984); United States v. Maroney, 339 F.2d 710, 714 (3d Cir. 1965); United States v. McCraw, 920 F.2d 224, 228 (4th Cir. 1990); United States v. Richard, 994 F.2d 244, 247 (5th Cir. 1993); United States v. Allen, 106 F.3d 695, 698 (6th Cir. 1997); United States v. Foxworth, 8 F.3d 540, 544 (7th Cir. 1993); United States v. Conner, 127 F.3d 663, 666 (8th Cir. 1997); United States v. Nerber, 222 F.3d 597, 600 n.2 (9th Cir. 2000); United States v. Wicks, 995 F.2d 964, 969 (10th Cir. 1993); United States v. Forker, 928 F.2d 365, 370 (11th Cir. 1991); United States v. Halliman, 923 F.2d 873, 878 (D.C. Cir. 1991).

remain free from governmental invasion; (6) whether he took normal precautions to maintain his privacy; and (7) whether he was legitimately on the premises.

See State v. Turnbill, 640 S.W.2d 40, 46 (Tenn. Crim. App. 1982); see also State v. Oody, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991); State v. Woods, 806 S.W.2d 205, 208 (Tenn. Crim. App. 1990).

Although the Turnbill test appears to apply a totality-of-the-circumstances approach to determine whether a defendant has an actual or subjective expectation of privacy in the object of a search, the test does not address what effect a defendant's disclaimer of ownership has upon his or her expectation of privacy. Indeed, in the cases where the intermediate court has considered a defendant's disclaimer, this fact has received only as much attention as the other Turnbill factors would permit.[4] However, a long line of cases from this Court indicates that a defendant's disclaimer is more than just another factor to consider, and "when one disclaims interest in the premises or possessions searched or in the articles seized he cannot question the legality of the search and seizure . . . ." Bowman v. State, 211 Tenn. 38, 41, 362 S.W.2d 255, 257 (1962).[5] In fact, at least one of our previous decisions suggests that when a defendant disclaims an interest in the object of a police investigation at the time of the search, then this fact alone will deprive a defendant of any expectation of privacy, irrespective of considerations such as ownership or possession. See Miller v. State, 520 S.W.2d 729, 733-34 (Tenn. 1975).

Although at least one commentator has maintained that mere disclaimer of ownership, unlike actual abandonment of ownership, should not defeat an expectation of privacy, see 5 Wayne R. LaFave, Search and Seizure § 11.3(a), at 128, 187 (3d ed. 1996) (specifically noting our decision in Miller), we continue to hold otherwise. In the vast majority of jurisdictions, courts have equated a denial or disclaimer of an interest in the object of a search with formal abandonment, because like abandonment, "[t]aken at face value, this denial makes it reasonable to conclude that the defendant claims no possessory interest" in the object of the search. See, e.g., United States v. Basinski, 226 F.3d 829, 837 (7th Cir. 2000).[6] In fact, several federal circuits have held that a disclaimer or denial

---

[4] See State v. Spears, No. 02C01-9705-CC-00170, 1998 WL 382186 (Tenn. Crim. App. filed at Jackson, July 1, 1998); State v. Hicks, No. 03C01-9203-CR-00097, 1993 WL 152413 (Tenn. Crim. App. filed at Knoxville, May 11, 1993).

[5] See also Kelley v. State, 566 S.W.2d 858, 858-59 (Tenn. 1978); State v. Calvert, 219 Tenn. 534, 542, 410 S.W.2d 907, 911 (1966); Neal v. State, 206 Tenn. 492, 494-95, 334 S.W.2d 731, 732 (1960); State v. Bell, 832 S.W.2d 583, 587 (Tenn. Crim. App. 1991); Delay v. State, 563 S.W.2d 905, 907 (Tenn. Crim. App. 1977).

[6] Agreeing with Professor LaFave, some state supreme courts have interpreted their own state constitutions in disclaimer and abandonment cases to provide greater protection against unreasonable searches and seizures than the Fourth Amendment. Illustrative is State v. Hempele, 576 A.2d 793, 802 (N.J. 1990), in which the New Jersey Supreme Court held that a defendant need not show a subjective privacy interest to challenge the validity of a search. While the Hempele Court noted that the Fourth Amendment would compel a contrary finding, it stated that "the New Jersey Constitution requires only that an expectation of privacy be reasonable." Id. at 802. Nevertheless, as the law in (continued...)

of ownership "demonstrates sufficient intent of disassociation to prove abandonment," United States v. Lewis, 921 F.2d 1294, 1302 (D.C. Cir. 1990),[7] and because the concept of abandonment in Fourth Amendment jurisprudence is unlike that found in property law concepts, "abandonment" here may be shown "merely [by] an intent voluntarily to relinquish [a] privacy interest . . . ." See United States v. Barlow, 17 F.3d 85, 87-88 (5th Cir. 1994).[8] Accordingly, we reaffirm that a defendant's disclaimer of an interest in the object of a government investigation will result in a loss of the defendant's subjective expectation of privacy in that object, irrespective of other considerations such as actual ownership or possession.

Turning to the facts of this case, we conclude that the appellant's conduct failed to exhibit an "actual (subjective) expectation of privacy" in the motel room. Katz, 389 U.S. at 361 (Harlan, J., concurring). The trial court's findings, which are supported by the weight of the evidence, demonstrate the following facts: (1) the appellant produced the key to room 132 from his sock voluntarily and without being asked to do so by any of the officers; and (2) the appellant not only denied ownership of the key to room 132 when asked, but he actually asserted that the key belonged to someone else. By disclaiming ownership of the key, the appellant effectively gave "the authorities the green light to proceed insofar as his own Fourth Amendment rights [were] concerned," see People v. Allen, 21 Cal. Rptr. 2d 668, 671 (Cal. Ct. App. 1993), and this disclaimer, combined with his assertion that the room actually belonged to someone else, is sufficient evidence that he abandoned his otherwise reasonable expectation of privacy in the room. Accordingly, we hold that the trial court correctly denied the appellant's motion to suppress the search of the motel room.

We also reject the appellant's argument that his disclaimer of the key had no effect upon his privacy interest in the room itself. We will not re-examine the factual findings of the trial court when those findings are supported by the weight of the evidence, Odom, 928 S.W.2d at 23, but even taken as true, we find the appellant's distinction to be meaningless. By voluntarily relinquishing the key, the appellant relinquished his ability to exclude others from the room. Because "[n]either possession nor ownership of property establishes a legitimate expectation of privacy unless the party

_____

[6] (...continued)
Tennessee has long been that disclaimer of interest in the object of a search defeats a defendant's subjective expectation of privacy, Article I, section 7 of the Tennessee Constitution does not compel a similar result.

[7] See also United States v. Han, 74 F.3d 537, 543 (4th Cir. 1994) ("Denial of ownership . . . constitutes abandonment."); United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994) (stating that "one who disclaims ownership is likely to be found to have abandoned ownership"); United States v. Torres, 949 F.2d 606, 608 (2d Cir. 1991) ("It is well settled that an otherwise legitimate privacy interest may be lost by disclaiming or abandoning property, especially when actions or statements disavow any expectation of privacy.").

[8] See also, e.g., Zapata, 18 F.3d at 978 (stating that "disclaiming ownership is tantamount to declaring indifference, and thus negates the existence of any privacy concern" in the object of the search); Lewis, 921 F.2d at 1302 ("Abandonment for purposes of the Fourth Amendment differs from abandonment in property law; here, the analysis examines the individual's reasonable expectation of privacy, not his property interest in the item."); United States v. Veatch, 674 F.2d 1217, 1220-21 (9th Cir. 1981) ("Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.").

vigilantly protects the right to exclude others," United States v. Torres, 949 F.2d 606, 608 (2d Cir. 1991) (citing United States v. Salvucci, 448 U.S. 83, 90-93 (1980)), a party cannot assert a privacy interest in a room after surrendering his or her ability to control who could have access to that room. Accord State v. Huffman, 820 P.2d 329, 330-331 (Ariz. Ct. App. 1991) (holding that denial of ownership of motel room key relinquishes any reasonable expectation of privacy in the room). Therefore, we conclude that the appellant's attempted distinction is without merit.

The dissent asserts that our holding on this issue is "illogical" because it permits the State to deny the defendant's possession of the hotel room during the suppression hearing, yet seek to prove the defendant's possession of the room during the trial. Respectfully, not only has the dissent's view been rejected by the United States Supreme Court for more than two decades, see Salvucci, 448 U.S. at 88-89, but it also ignores that the Fourth Amendment protects against unreasonable intrusions of *privacy*, not merely against unreasonable interference with possession of property. The dissent seems to overlook the fact that possession of an object or place is only relevant to the extent that it demonstrates the presence of an expectation of privacy. Katz, 389 U.S. at 351.[9] Therefore, contrary to the dissent's characterizations, the State has not taken contradictory or "illogical" positions throughout the course of this litigation. The State's position at the suppression was not that the appellant lacked a possessory interest in the hotel room; it was simply that he lacked any legitimate expectation of *privacy* in that room. See, e.g., United States v. Thomas, 864 F.2d 843, 845 (D.C. Cir. 1989) (stating that "it is possible for a person to retain a property interest in an item, but nonetheless to relinquish his or her reasonable expectation of privacy in the object."). It was with perfectly legal consistency, then, that the State argued later at trial that the appellant's possession of the motel room established his constructive possession of the items contained therein.

We agree that actual possession of searched premises is an important factor to consider when assessing whether a defendant has a privacy interest that society is willing to accept as legitimate. Our agreement with this principle is precisely the reason we have concluded that the appellant's expectation of privacy in his motel room could have been one that society is willing to recognize as reasonable. However, the Fourth Amendment also requires that the defendant demonstrate that he or she retained a *subjective* interest of privacy in the place searched. Contrary to the views of the dissent, one can rarely, if ever, demonstrate a subjective interest of privacy simply from the mere fact of possession, and the law requires that a defendant act in some manner consistent with his or her right to exclude others. See Torres, 949 F.2d at 608. Consequently, while the evidence in this case reflects that the appellant had an actual possessory interest in the motel room and its contents—such that an indictment for possession of drugs and drug paraphernalia may be sustained—the record is also clear that he abandoned any privacy interest in the room when he relinquished his right of exclusion. We can conceive of no reasonable justification for holding that one who renounces his or her subjective expectation of privacy in a room should be able to later claim that an invasion of that privacy was unreasonable.

---

[9] "[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (citations omitted).

-8-

The dissent also expresses the view that citizens "should not be forced to choose between incriminating themselves or sacrificing their right to insist that the police obtain a warrant before intruding upon their property." Whatever merit this view may have, the appellant in this case was not forced to make such a choice. Importantly, the appellant has never denied that he was in possession of the motel room, and he readily admitted this fact at the suppression hearing and again at trial. Indeed, his defense has consistently been that the drugs and drug paraphernalia belonged to another occupant of the room, not that he lacked any possessory interest in the room in which these items were found.

Because the appellant has conceded that he had a possessory interest in the motel room, we do not find that any manifestation of a subjective privacy interest in that room would have been tantamount to compelled self-incrimination. We note, however, that another case may be presented where the assertion of ownership or possession goes to prove an essential, contested element of the crime. See Simmons v. United States, 390 U.S. 377, 394 (1968). Because this issue need not be resolved today, however, we await the appropriate case in which to fully address this question.

## SUFFICIENCY OF THE EVIDENCE

Having found that the search of the motel room did not violate the appellant's rights under the federal or state Constitutions, we must now address whether the evidence is sufficient to support the appellant's convictions for possession of crack cocaine and drug paraphernalia. The appellant takes specific issue with the possession element of each charge, and he argues that because the motel operator testified that a second person was registered as a guest in room 132, the evidence does not support a finding that the cocaine in room 132 was possessed by the appellant. We disagree.

When a defendant challenges the sufficiency of the convicting evidence on appeal, this Court begins with the premise that a guilty verdict "removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Williams, 913 S.W.2d 462, 466 (Tenn. 1996). The State is not only entitled to the strongest legitimate view of the evidence on appeal, but it is also entitled to all reasonable and legitimate inferences that may be drawn from the evidence. State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999). In determining the sufficiency of the evidence, this Court will not reweigh the evidence, State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), nor will we substitute our inferences for those drawn by the trier of fact, State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998). Consequently, when the sufficiency of the evidence is challenged, "the standard for review by an appellate court is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000) (quoting State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999)); see also Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).

*POSSESSION OF A CONTROLLED SUBSTANCE*

We analyze first the evidence supporting the appellant's conviction for possession of a controlled substance. Tennessee Code Annotated section 39-17-417(c)(1) (1997 & Supp. 2000) requires the State prove the existence of three elements beyond a reasonable doubt: (1) that the defendant possessed a controlled substance; (2) that the substance contained 0.5 grams of cocaine or more; and (3) that the defendant possessed the substance with the intent deliver or sell it. Upon reviewing the record, little question exists that the second and third elements have been proven present beyond a reasonable doubt. At trial, Ms. Kaye Sherriff, a forensic scientist with the Tennessee Bureau of Investigation Crime Lab, testified that the substance recovered from room 132 was cocaine base and weighed 53.5 grams, and we find that this evidence is sufficient to establish that the substance was one "containing cocaine" of 0.5 grams or more. See State v. Holt, 691 S.W.2d 520 (Tenn. 1984). Further, Officer Mike Moncher, who is an undercover officer with the 24th Judicial District Drug Task Force, testified that the digital scales and plastic sandwich bags also recovered from room 132 are commonly used to package crack cocaine for resale. These items, along with the relatively large amount of cocaine base recovered, clearly demonstrate that the defendant had an intent to sell the controlled substance. See Tenn. Code Ann. § 39-17-419 (1997); State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999). Accordingly, taking the testimony from these two witnesses in the light most favorable to the State, we conclude that the evidence is sufficient to support finding these two elements of the crime beyond a reasonable doubt.

The real issue, therefore, is whether the evidence is sufficient to support a finding that the appellant "possessed" the cocaine base found in room 132. We first note that the statute prohibiting "possession" of a controlled substance is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element. State v. Brown, 823 S.W.2d 576 (Tenn. Crim. App. 1991); Peters v. State, 521 S.W.2d 233 (Tenn. Crim. App. 1974). In discussing the nature of constructive possession in a similar context, the Court of Criminal Appeals has stated that

> [t]he term "possession," as used in the [controlled substances] statute, embraces both actual and constructive possession. Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." In other words, "constructive possession is the ability to reduce an object to actual possession."

State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996) (citations omitted) (omission and second alteration in original). As such, although a defendant's mere presence at a place where controlled substances are found will not support an inference of possession, id. at 956, a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves, see Armstrong v. State, 548 S.W.2d 334 (Tenn. Crim. App. 1976).

In this case, viewing the evidence in the light most favorable to the State, the evidence is more than sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the

appellant possessed the cocaine base. The proof was uncontroverted that room 132 was registered in the appellant's name, that the appellant himself paid for the room in cash, and that the appellant possessed the key to room 132. Inside the room, officers discovered several items bearing the appellant's name, including his wallet, two car titles, and a receipt dated August 28. Although the room was registered for two persons, we find that the appellant's possession of and residence in the motel room is strong evidence of his "ability to reduce [the cocaine base] to actual possession," Transou, 928 S.W.2d at 956, and consequently, we hold that the evidence is more than sufficient to establish the appellant's constructive possession of the cocaine base found in room 132.

### *POSSESSION OF DRUG PARAPHERNALIA*

For many of the same reasons, we also conclude that the evidence is sufficient for a rational trier of fact to find the elements of possession of drug paraphernalia with unlawful intent beyond a reasonable doubt. Tennessee Code Annotated section 39-17-425(a)(1) requires the State to prove three elements beyond a reasonable doubt: (1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute. See also State v. Mallard, 40 S.W.3d 473, 486 (Tenn. 2001) (listing elements to be proven under section 39-17-425(a)(1)).

The evidence in the record demonstrates that the electronic scales and plastic sandwich bags could be used as drug paraphernalia and that the defendant intended to use the items for illicit purposes. Officer Moncher, who has had specialized training and ten years of experience in narcotics law enforcement, testified that electronic scales are commonly used to weigh narcotics[10] and that plastic bags are commonly used to package crack cocaine, usually for resale. Further, the presence of these items in close proximity to such a large amount of crack cocaine, along with the fact that, according to Officer Moncher, several "rocks" of crack cocaine were already packaged for resale, certainly supports a finding that these items were intended to be used to package cocaine for resale. Finally, as we found earlier, the evidence is more than sufficient to support a finding that these items were within the constructive possession of the appellant. Cf. State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997) (upholding a conviction for constructive possession of drug paraphernalia). Accordingly, we hold that the evidence in this case is sufficient to support a finding beyond a reasonable doubt that the defendant possessed drug paraphernalia with the intent to process, prepare, or package crack cocaine in violation of Tennessee Code Annotated section 39-17-425(a)(1).

### CONSIDERATION OF MITIGATING FACTOR IN SENTENCING

Finally, the appellant asserts that the trial court improperly sentenced him to serve the maximum sentence in the range by refusing to consider the mitigating factor that "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury," Tenn. Code Ann. § 40-35-

---

[10] Officer Moncher testified that electronic scales are used for "bulk" sales of narcotics, whereas individual sales of crack cocaine are usually made in single rocks weighing about 0.1 grams apiece.

113(1). In response, the State argues that the sentence was proper because this mitigating factor cannot apply in cases involving possession of cocaine. We disagree.

When either a defendant or the State "challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review of the record with a presumption that the determinations made by the sentencing court are correct." State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000); see also Tenn. Code Ann. §§ 40-35-401(d), -402(d) (1997). This presumption of correctness, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). So long as the trial court "followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and [when] the trial court's findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result." State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998).

The appellant's greater conviction for possession of a controlled substance constitutes a Class B felony,[11] and in determining the appropriate sentence for this offense, a court begins with the presumption that the appellant should receive the minimum in the range. See Tenn. Code Ann. § 40-35-210(c). If the court finds the presence of any enhancement or mitigating factors, the court should first increase the sentence within the range based upon the enhancement factors and then reduce the sentence as appropriate for any mitigating factors. See Tenn. Code Ann. § 40-35-210(d), (e). On appeal, we will uphold the ultimate sentence imposed by the trial court so long as (1) it complies with the purposes and principles of the 1989 Sentencing Act, and (2) its findings are adequately supported by the record. See Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; see also Ashby, 823 S.W.2d at 169.

In this case, the trial court found that the State had proven three enhancement factors warranting a sentence greater than the minimum: (1) that the appellant has a previous history of criminal behavior, Tenn. Code Ann. § 40-35-114(1); (2) that the appellant has a previous history of unwillingness to comply with conditions of sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8); and (3) that the appellant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed as an adult, Tenn. Code Ann. § 40-35-114(20). Based on our review of the record, we conclude that all three of these enhancing factors were correctly applied. First, the appellant has a substantial adult criminal history involving convictions for aggravated burglary, theft, possession of drug paraphernalia, several weapons offenses, and other lesser misdemeanors, including evading arrest, contributing to the delinquency of a minor, criminal trespass, and driving on a revoked and suspended license. Second, the appellant has demonstrated an unwillingness to comply with previous conditions of community release as his parole for aggravated burglary was revoked. Finally, the appellant has several acts of

---

[11] As a practical matter, because the appellant received concurrent sentences, we are concerned only with the review of the greater of the two sentences.

-12-

adjudicated delinquence as a minor, which include adjudications for grand larceny, concealing stolen property, automobile theft, and possession of controlled substances. We agree with the trial court that these factors are entitled to substantial weight.

With respect to the presence of mitigating factors, the trial court refused to consider the factor urged by the defendant that his conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). In rejecting this mitigating factor, the trial court stated that "[t]he nature of the substance involved—crack cocaine, the substantial quantity—I don't think it could be said that that did not threaten any type of serious bodily injury[,] because it is an inherently addictive and dangerous substance that he had in his possession in a very significant quantity." After a careful review of the record, we respectfully disagree that the "nature of the substance" justifies rejection of this mitigating factor on the facts of this case.

By its plain language, the section 40-35-113(1) mitigating factor focuses not on the circumstances of the crime committed by a defendant as do many of the other mitigating and enhancing factors. Rather, this factor focuses upon the defendant's *conduct* in committing the crime. Although cocaine itself may well be, in the words of the trial court, an "inherently addictive and dangerous substance," this fact alone says nothing about the appellant's criminal *conduct*, which was constructive possession of the substance located in a room several doors down from where the officers initially found the appellant. Moreover, we see no evidence in the record that the appellant actually sold or attempted to sell the drug at the time of the offense. Had either of these circumstances been present, then the dangerous nature of the drug, combined with the dangerous nature of many drug transactions, may have indeed supported the trial court's rejection of this factor as constituting a threat of serious bodily injury. As it was, however, the appellant's presence down the hall from the substance cannot be said to have threatened serious bodily injury to any person.

The State notes that the Court of Criminal Appeals has split on the issue of whether a *per se* exclusion of this mitigating factor is warranted in cocaine possession cases, and we acknowledge that many of that court's unpublished decisions have found this factor to be inapplicable in cocaine possession cases, usually for the same reasons as cited by the trial court. Without attempting to analyze or distinguish the many and varied facts and circumstances in these cases, we conclude that when, as here, (1) the conviction for possession is based only upon constructive possession, and (2) the threat of serious bodily injury is more conceptual than real, little justification exists in having a *per se* rule that excludes consideration of this mitigating factor. Indeed, a *per se* exclusion of a particular mitigating factor to an entire class of offenses not always or not inherently involving serious bodily injury undermines the notion of individualized sentencing that underlies the 1989 Criminal Sentencing Reform Act. See State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994); cf. Hooper, 29 S.W.3d at 9 (rejecting offenses that are "deterrable *per se*" as detrimental to individualized sentencing).

However, in rejecting a *per se* exclusion of this mitigating factor in cocaine possession cases, we do not require that this factor be accorded any especial significance in a given case. Indeed, given the facts of this case, we conclude that the mitigating factor is entitled to very little weight in

the overall sentencing determination. Our review of the record indicates that the trial court appropriately assigned substantial weight to the three enhancing factors, and because the scales are tipped so far in their favor, we are unable to say that the maximum sentence in the range is improper or contrary to the preponderance of the evidence. Cf. State v. Ruane, 912 S.W.2d 766, 785 (Tenn. Crim. App. 1995). Accordingly, we hold that while the trial court should have considered the section 40-35-113(1) mitigating factor in deciding upon an ultimate sentence, the sentence that it actually imposed was proper. The judgment of the Court of Criminal Appeals on this issue is affirmed.

**CONCLUSION**

In summary, we affirm the appellant's convictions for possession of a controlled substance and possession of drug paraphernalia. We hold that the search of the appellant's motel room did not violate the Forth Amendment to the United States Constitution or Article I, section 7 of the Tennessee Constitution. Because the appellant disclaimed ownership of the room key and because he claimed that the key belonged to another person, he thereby forfeited any reasonable expectation of privacy that he may have otherwise possessed in that room. We further hold that the evidence is sufficient for a reasonable jury to find guilt beyond a reasonable doubt on both charges and that the sentence imposed by the trial court was according to the preponderance of the evidence. The judgment of the Court of Criminal Appeals is affirmed.

Costs of this appeal are assessed to the appellant, Peter Allen Ross, for which execution shall issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE