# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 28, 2001

## STATE OF TENNESSEE v. CHIANTI  FULLER

**Appeal from the Circuit Court for Bedford County**
**No. 14726     William Charles Lee, Judge**

---

**No. M2001-00463-CCA-R3-CD - Filed December 28, 2001**

---

The Defendant, Chianti Fuller was indicted for four offenses: (1) possession with intent to sell 0.6 grams of cocaine, a schedule II controlled substance, (2) possession with intent to deliver 0.6 grams of cocaine, a schedule II controlled substance, (3) simple possession of marijuana, a schedule VI controlled substance, and (4) possession of drug paraphernalia.  The Defendant was convicted by a jury of counts (1) and (2), and pled guilty to counts (3) and (4).  The trial court merged count two into count one and sentenced the Defendant to nine years and six months for possession of cocaine with intent to sell.  The Defendant was also sentenced to nine months to be served concurrently with his other sentence for each of the two misdemeanor convictions.  On appeal, the Defendant contends that (1) the evidence presented at trial was insufficient to support the jury verdict of guilt beyond a reasonable doubt and (2) the sentence was excessive.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the appellant, Chianti Fuller.

Paul G. Summers, Attorney General and Reporter; Kathy Aslinger, Assistant Attorney General; Mike McCown, Assistant District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On March 4, 2000, Director Tim Lane and Assistant Director Shan Daugherty of the Seventeenth Judicial District Drug Task Force stopped a car in Shelbyville, Tennessee based upon information obtained by Director Lane from a confidential informant.  The informant told the Director that the two men in the car would be in possession of a large amount of crack cocaine.  After stopping the vehicle, Director Lane approached it on the driver's side and Assistant Director Daugherty approached the vehicle on the passenger's side.  As the officers approached, Assistant

Director Daugherty observed the Defendant, who was sitting in the front passenger seat, attempt to hide an object under the seat. The officer instructed the Defendant to roll his window down, and then noticed a beer can protruding from underneath the Defendant's seat. The Defendant was then instructed to hand the officer the beer and step out of the car. Once out of the car, the officer conducted a pat down search of the Defendant and discovered a hard object in the Defendant's back pocket. When asked about the object, the Defendant removed a crack pipe from his back pocket and handed it to the officer. The Defendant was immediately placed under arrest for possession of drug paraphernalia.

After placing the Defendant under arrest, Assistant Director Daugherty conducted a more thorough search and discovered $111.00 in cash and what appeared to be crack cocaine in the Defendant's sock. Donna Flowers, a forensic chemist with the Tennessee Bureau of Investigation, testified that the substance found in the Defendant's sock was 0.6 grams of cocaine, a schedule II controlled substance.

The driver of the car, Jesse Carter, was also arrested after a brief struggle which ensued when Director Lane realized Mr. Carter was attempting to chew up and swallow a bag of what was later identified as 1.3 grams of crack cocaine. After Mr. Carter's arrest, the officers searched the car and found $223.00 in cash and 9.4 grams of marijuana.

Following the arrests, the Defendant was taken to the Bedford County Sheriff's Department, advised of his rights, and interviewed by Director Lane and Officer Thomas Biele. Prior to the interview, the Defendant signed a waiver of rights form; however, the interview was not recorded by video or audio tape. Director Lane and Officer Biele testified at trial as to the statements made by the Defendant in the interview. During the interview, the Defendant admitted to traveling from Nashville to Shelbyville with Mr. Carter on two previous occasions to sell crack cocaine. The Defendant stated that Mr. Carter would give him approximately one gram of crack cocaine, and he would sell it in smaller amounts. The Defendant estimated that he had sold close to seven grams of crack cocaine on behalf of Mr. Carter. The Defendant also stated that he sometimes sold crack cocaine in Shelbyville without the help of Mr. Carter. Despite making these statements, the Defendant refused to make any statements regarding the 0.6 grams found in his possession on March 4. A butt of a marijuana cigarette was also found in the Defendant's coat pocket while the Defendant was being processed.

Director Lane testified that the street value of the crack cocaine found in the Defendant's sock would be approximately $60.00. According to the Director's testimony, a crack addict typically purchases approximately 0.2 grams, or $20.00 worth, of crack cocaine at a time. However, Director Lane did concede that an addict may, at times, buy as much as $50 worth of crack cocaine.

The Defendant testified on his own behalf at trial. He stated that on March 4, 2000, he accompanied Mr. Carter to Shelbyville where Mr. Carter intended to visit his girlfriend. The Defendant had accompanied Mr. Carter on several such trips in the past, and also had a friend in Shelbyville, Cynthia Rankins. Upon arriving in town, the Defendant asked Mr. Carter to take him

to Ms. Rankins' residence.  Finding Ms. Rankins to be not at home, the Defendant walked around the neighborhood and eventually bought $50.00 worth of crack cocaine from a man on the street. The Defendant smoked part of the crack cocaine while he waited for Mr. Carter to return, and placed the rest in his sock.  Two hours later, Mr. Carter arrived and the two left, only to be stopped shortly thereafter by Director Lane and Assistant Director Daugherty.

The Defendant contended at trial that the cocaine found in his possession was solely for his personal use.  He admitted to being a crack addict, but denied ever selling crack cocaine.  The Defendant denied ever making statements to police concerning his involvement with Mr. Carter in selling crack cocaine, and asserted that he was not aware that Mr. Carter sold crack cocaine.

## SUFFICIENCY

The Defendant first contends that the evidence is insufficient to support the jury's finding of guilt beyond a reasonable doubt to the charges of possession with the intent to sell or deliver the drugs.  The Defendant concedes that he was in possession of crack cocaine, however, he contends that there is no evidence to establish that he had an intent to sell or deliver.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000).  In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom."  Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279.  The court may not "re-weigh or re-evaluate the evidence" in the record below.  Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105.  Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment.  Tuggle, 639 S.W.2d at 914.  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The Defendant was convicted pursuant to Tennessee Code Annotated section 39-17-417(a) which prohibits a person to "[p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance."  Tenn. Code Ann. § 39-17-417(a)(4).  The Defendant concedes that

he was in possession of 0.6 grams of crack cocaine, but contends that the cocaine was for his personal use and that he had no intent to sell or deliver the drug.

Despite the Defendant's contention, there is sufficient evidence within the record to support the jury's finding that the Defendant did possess the intent to sell or deliver the crack cocaine. The Defendant was found in possession of 0.6 grams, or $60.00 worth of crack cocaine. Director Lane testified that a crack addict would normally buy only approximately 0.2 grams, or $20.00 worth, of crack, but occasionally may buy as much as 0.5 grams, or $50.00 worth, of crack cocaine. Director Lane also stated that the Defendant told him he had previously sold crack cocaine in Shelbyville, with and without Mr. Carter, on several occasions. The Defendant gave Director Lane a detailed description of the technique the Defendant and Mr. Carter utilized when selling crack cocaine. The Defendant informed Director Lane that he had sold approximately seven grams, or $700 worth of crack cocaine in Shelbyville on behalf of Mr. Carter.

While the Defendant denied making these statements, it is clear that the jury resolved this conflict in favor of the State and accredited the testimony of Director Lane. Accordingly, in the light most favorable to the State, we find sufficient evidence to support the Defendant's convictions for possession of a controlled substance with intent to deliver and sell.[1]

## SENTENCING

The Defendant also contends that the sentence imposed by the trial court is excessive. The Defendant was convicted of possession with intent to deliver .6 grams of cocaine, a Class B felony, and sentenced as a Range I standard offender. See Tenn. Code Ann. § 39-17-417 (c)(1). The sentencing range for a Class B felony is therefore eight to twelve years. See Tenn. Code Ann. § 40-35-112(a)(2). The Defendant was sentenced to nine years and six months. Although on appeal the Defendant does not suggest that the trial court failed to properly consider enhancement or mitigating factors, he asserts that only a minimum sentence of eight years would be appropriate in this case.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of

---

[1] The Defendant contends as part of the sufficiency argument in his brief that he was improperly convicted of both possession of cocaine with intent to sell and possession of cocaine with intent to deliver based upon the same evidence in violation of double jeopardy protections. However, it is clearly stated on the Judgment for count two that the two convictions were properly merged. See State v. Thornton, 10 S.W.3d 229, 233-38. Therefore, the Defendant now stands convicted of only one offense: possession of cocaine with intent to sell.

sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In sentencing the Defendant, the trial court examined the presentence report and stated the following:

> The Court finds that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range.
>
> And as the State has argued, there are two different avenues that the Court can consider.
>
> The Court is concerned that the defendant apparently has rooked the State of Tennessee on more than one occasion in securing the privilege to drive. He gets a license that is revoked, goes back and gets another one under a different name. And then he gets that one revoked, and he goes back and gets a license under a different name.
>
> Well, each of those revocations are criminal behavior that the Court can consider. But the Court can also consider and does give greater weight to those convictions than the Court would normally give to a misdemeanor conviction because of the circumstances surrounding how apparently those convictions occurred
> . . . .
> The Court also finds that the defendant's statement which was introduced at trial could – to be the more likely case; and, that is, that the defendant, in an effort to support his habit, did engage in the sale of drugs, and on more than one occasion. And in each of those occasions, then the Court finds there to be criminal behavior.

The evidence presented at trial, as well as the information provided by the presentence report, clearly established the Defendant's history of criminal activity. The trial court did not err in finding the history of criminal activity qualified as an enhancement factor. See Tenn. Code Ann. § 40-35-113(1).

The Defendant suggested three mitigating factors, and all were rejected by the trial court. First, the Defendant asserted that because he played a minor role in the commission of the offense,

his sentence should have been mitigated. See Tenn. Code Ann. § 40-35-113(4). The trial court specifically found that the Defendant was more that a minor role player in the offense charged. The trial court rejected the Defendant's contention that Mr. Carter was the major drug dealer in the present case and the Defendant was simply an underling. We note that the Defendant was not charged with any offenses relating to Mr. Carter, but only with possession of the drugs and paraphernalia that were found on his person. We find no error on the part of the trial court in rejecting the application of this factor.

Next, the Defendant argued that the trial court should have considered his employment history and his drug addiction as mitigating factors under Tennessee Code Annotated section 40-35-113(13). In rejecting the Defendant's argument, the trial court noted that the Defendant's employment history was unverifiable because he was often self-employed. The trial court's refusal to rely upon an unverified employment record and a drug addiction to mitigate the Defendant's sentence was not improper.

Finally, the Defendant contended that his sentence should be mitigated because his conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). The trial court rejected the Defendant's contention based upon our decision in State v. Millbrooks, 819 S.W.2d 441 (Tenn.Crim.App 1991), where we held that "considering the potency of crack cocaine, it certainly can be said that there is a high risk to human life from the distribution of that substance." Id. at 446-447. See also Tenn. Code Ann. § 40-35-114(16). The trial court reasoned that if the sale of crack cocaine can be used as an enhancement factor due to the high risk to human life, a defendant who is convicted of possession of crack cocaine with the intent to sell that substance cannot use the fact that a sale never occurred as a mitigating factor.

In a recent case in which a defendant was convicted of possession of cocaine with intent to sell or deliver, our supreme court held that "where, (1) the conviction for possession is based only upon constructive possession, and (2) the threat of serious bodily injury is more conceptual than real, little justification exists in having a *per se* rule that excludes consideration of this mitigating factor." State v. Ross, 49 S.W.3d 833, 848-49 (Tenn. 2001). The supreme court based its ruling on the conceptual nature of the threat of serious bodily injury and the lack of evidence showing the defendant sold or attempted to sell the drug at the time of the offense. Id. The supreme court also stated that "a *per se* exclusion of a particular mitigating factor to an entire class of offenses not always or not inherently involving serious bodily injury undermines the notion of individualized sentencing that underlies the 1989 Criminal Sentencing Reform Act." Id. at 849. Therefore, we find that, because no evidence was presented that the Defendant actually sold or was selling the crack cocaine at the time of the offense, the trial court erred in refusing "per se" to consider Tennessee Code Annotated section 40-35-113(1) as a mitigating factor.

However, while the supreme court rejected a *per se* exclusion of 40-35-113(1) as a mitigating factor in felony cocaine possession cases, the court did not require the factor be accorded any special significance. See Ross, 49 S.W.3d at 849. Like Ross, given the facts of this case, we conclude that the mitigating factor is entitled to very little weight in the sentencing determination. After reviewing

the record, we find that the trial court gave appropriate weight to the enhancement factor, and we are unable to conclude that the sentence imposed is improper or unsupported by the record.  See State v. Ruane, 912 S.W.2d 766, 785 (Tenn.Crim.App. 1995).  Accordingly, we find that while the trial court should have considered 40-35-113(1) as a mitigating factor in deciding the Defendant's sentence, the sentence imposed was, nevertheless, proper.

## CONCLUSION

Accordingly, we find sufficient evidence to support the Defendant's conviction and sentence. The judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE