IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2007

## STATE OF TENNESSEE v. HERBERT COPE

**Direct Appeal from the Criminal Court for Overton County**
**No. 5944     Lillie Ann Sells, Judge**

_____

**No. M2006-01058-CCA-R3-CD - Filed May 22, 2007**

_____

The defendant, Herbert Cope, was convicted by an Overton County Criminal Court jury of sale of a Schedule II controlled substance (morphine), a Class C felony, and was sentenced by the trial court as a Range II offender to nine years in the Department of Correction. On appeal, he argues that the trial court imposed an excessive sentence by failing to apply applicable mitigating factors and erroneously applying an inapplicable enhancement factor. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID G. HAYES, J., joined.

Michael R. Giaimo, Livingston, Tennessee, for the appellant, Herbert Cope.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William Edward Gibson, District Attorney General; and John A. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

## Trial

The defendant and a codefendant, Gina Ledbetter, were each indicted on one count of sale of morphine and one count of delivery of morphine. The relevant proof at their joint trial established that on January 14, 2005, Special Agent Danny Espinoza of the Tennessee Bureau of Investigation, Detective Bill Randolph of the Livingston Police Department, and Agent Fred Stewart of the Drug Task Force met with a confidential informant to arrange an undercover purchase of morphine tablets

from the defendant. The confidential informant was fitted with an electronic monitoring device, and Agent Espinoza was given $150 in confidential funds. The two men then went to the defendant's residence in Livingston, where the informant introduced the undercover drug agent to the defendant. Agent Espinoza had never seen the defendant prior to that time.

Agent Espinoza told the defendant that he wanted to buy some morphine, and the defendant informed him that the price ran from $20 to $25 per tablet. Agent Espinoza then gave the defendant $100 for $100 worth of tablets, and the defendant informed him that they had to go see "Mrs. Ledbetter." The defendant also informed the undercover agent that he usually received an extra tablet as payment for making the purchase. In response, Agent Espinoza told the defendant that he would not buy an extra tablet but would pay him $20 for his services. Agent Espinoza paid the defendant, and the three men then went to Ledbetter's residence, but she was not home. At that point, the defendant contacted her by cell phone to discuss the drug sale and to arrange for her to meet the men at the defendant's residence. She arrived on schedule and Agent Espinoza watched as the defendant walked to her vehicle, gave her the cash, and received four morphine tablets in exchange. She left, and the defendant gave the tablets to Agent Espinoza.

Both Agent Espinoza and the drug agent who monitored the transaction testified at trial that neither Agent Espinoza nor the confidential informant pressured or pleaded with the defendant to purchase the morphine.

The defendant testified that he was fifty-three years old, lived with his mother, had been a bricklayer for twenty-seven years, and currently worked part-time with "Bobby Davis." He said he had a deteriorating disc in his back and a sleeping disorder for which his physician had prescribed a number of medications, including sleeping pills, Avenza, and Percocet. He stated that he was addicted to his prescription medication but did not sell drugs. The confidential informant was his cousin, David, who lived with him during the time that the events in this case transpired. According to the defendant, David was also addicted to prescription medication and regularly pleaded for the defendant to sell him some of his medicine, but he always refused.

The defendant testified that in the days preceding the January 14, 2005, drug transaction, David had twice asked him to purchase Oxycontin tablets for himself and another man he brought with him to the defendant's residence. On both of those prior occasions, he had refused. The defendant identified Agent Espinoza as the man who had accompanied his cousin on the second occasion and stated that, although he was not positive, he believed Agent Espinoza was the person with his cousin on the first occasion as well. The defendant testified that he had not really wanted to purchase the morphine tablets for Agent Espinoza but had agreed to do so because he was a drug addict and wanted some extra morphine for himself. He said he also felt sorry for his cousin, who was addicted to prescription medication and had no other means of obtaining drugs. The defendant stated that he would not ordinarily purchase drugs for someone else.

The defendant testified that he had been convicted of the felony offense of cultivation of marijuana in 1990 or 1991 and had a handgun charge in federal court, but it had been dismissed. He

stated that he had never been convicted of buying or selling drugs. The defendant said that he was not proud of what he had done and never intended to repeat his actions. On cross-examination, he acknowledged he had been involved in the "drug community" since he was forty years old.

After deliberating, the jury convicted both the defendant and his codefendant of both counts of the indictment, setting a $10,000 fine for each count. The trial court later merged the alternate counts into a single conviction for sale of morphine and assessed a $10,000 fine.

### Sentencing Hearing

Kerry Farley, the probation and parole officer who prepared the defendant's presentence report, testified that the defendant currently had a case pending in Overton County General Sessions Court for possession of drug paraphernalia. He said that the defendant's prior record included convictions for evading arrest, violation of the insurance law, possession of drug paraphernalia, simple possession, possession of marijuana, public intoxication, and production of marijuana. The defendant also had convictions in federal court for conspiracy to manufacture marijuana and the use of a firearm in the commission of a felony, for which he had received a ten-year sentence. Additionally, the defendant had violated his probation in 2005. Farley testified that he believed the defendant's evading arrest conviction had arisen out of his attempt to flee when served with the probation violation warrant:

> He had violated the General Sessions probation by picking up a new offense and that was taken care of at the same time as the previous charge. As a matter of fact[,] I believe the previous charge of evading arrest arose when they served him with a warrant on the violation of probation.

Farley testified that the defendant did not deny that he had committed the crime but expressed the belief that he had been "set up" and that the officers involved in the undercover drug purchase were "dirty." He said the defendant told him he was a drug addict and became involved in the transaction because "he was trying to help out another drug addict." The defendant also told him that he was sorry for the embarrassment his actions had caused his family. On cross-examination, Farley acknowledged that the defendant had been truthful and forthcoming in his conversations with him and had apologized in his written statement for his offense. When asked if he was certain that the defendant's probation violation had not been dismissed, Farley testified that he had pulled the jacket and made a copy of the judgment. He acknowledged, however, that the handwriting on the judgment was difficult to read.

The trial court noted from the sentencing report that the defendant had dropped out of school in the eighth grade but had earned his G.E.D. while incarcerated in the federal penitentiary. The court further noted that the defendant reported a number of health problems, including high blood pressure and back problems; admitted a past history of drug and alcohol abuse; and stated that he had been disabled since February 2001. The defendant also stated, however, that he had twice been denied disability benefits.

The trial court applied three enhancement factors to the defendant's sentence: the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; the defendant was a leader in the commission of an offense involving two or more criminal actors; and the defendant failed to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(1), (2), (8) (2006). The trial court rejected the defendant's proposed mitigating factors that his criminal conduct neither caused nor threatened serious bodily injury; that he acted under strong provocation; that he committed the offense under such unusual circumstances that it was unlikely that he was motivated by a sustained intent to violate the law; and that he acted under duress or domination of another person. See Tenn. Code Ann. § 40-35-113(1), (2), (11), (12) (2006). Applying great weight to enhancement factors (2) and (8), the trial court enhanced the defendant's sentence from six years, the minimum sentence for a Range II offender convicted of a Class C felony, to nine years, one year less than the maximum sentence in the range.

## ANALYSIS

The defendant's sole issue on appeal is whether the trial court imposed an excessive sentence. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because the record reveals that the trial court adequately considered the sentencing principles and all relevant facts and circumstances, our review is *de novo* with a presumption of correctness afforded to the trial court's sentencing determinations. Tenn. Code Ann. § 40-35-401(d); Ashby, 823 S.W.2d at 169.

In conducting a *de novo* review, we consider (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) the mitigating and enhancement factors; (6) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168. The burden of showing that the sentence was improper falls upon the defendant. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Effective June 7, 2005, Tennessee Code Annotated sections 40-35-114 and 40-35-210 were rewritten in their entirety. While this defendant could have elected to be sentenced pursuant to these new provisions, the record on appeal does not contain a waiver showing that he did so. Thus, the revised statutes are not applicable. See Tenn. Code Ann. §§ 40-35-114, -210, Compiler's Notes.

The trial court is to impose a sentence within the range of punishment, as determined by the defendant's offender classification. Tenn. Code Ann. § 40-35-210(c). In imposing a specific

sentence within that range, the trial court shall consider, but is not bound by, the following guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence or mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Cmts.; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

The defendant asserts that "[w]hether [he] was actually found guilty of a probation violation is anyone's guess based upon the record in this case." In support, he relies solely on Farley's acknowledgment that the general sessions court records were confusing and the judgment form difficult to read. In applying this enhancement factor, the trial court found as follows:

> Additionally, the court finds as to this defendant that he had a previous history of unwillingness to comply with the conditions of [a] sentence involving release into the community and that is supported on page six of his investigative report with the violation of probation in Overton County General Sessions. This occurred on January 12th, 2006, on page 6, second entry from the top, and that is a result of a conviction earlier in the General Sessions Court of a lesser included offense of a drug charge here in Overton County, according to the testimony of the officer and according to this report, that he was violated while he was on probation at least on one occasion pursuant to the report here. The court makes that finding and again places a great deal of weight on that enhancement factor.

We can find no error in the trial court's application of this enhancement factor. The probation and parole officer who investigated the defendant's records and prepared his presentence report acknowledged that the general sessions court records were confusing. Nonetheless, he determined after pulling the records that the defendant had been found in violation of his probation in general sessions court, and he included this information in the presentence report. The defendant presented no evidence to refute this determination. We conclude, therefore, that the record supports the trial court's finding that the defendant had previously failed to comply with the conditions of a sentence involving release into the community.

The defendant also argues that the trial court erred by not applying as a mitigating factor the fact that he acted under strong provocation or duress. In support of the applicability of this factor, he points out that the confidential informant was his own cousin, with whom he had a close relationship and who was living with him at the time of the offense. The defendant also points to his trial testimony that his cousin had been continually pleading for the defendant to purchase drugs for him. However, according to the drug enforcement officers who testified at trial, neither the confidential informant nor Agent Espinoza badgered or begged the defendant to engage in the transaction. We conclude, therefore, that the trial court did not err by refusing to apply this mitigating factor.

Finally, the defendant argues that the trial court erred by not applying as a mitigating factor the fact that his offense neither caused nor threatened serious bodily injury. The State argues that even if this factor were applicable, it was entitled to only minimal weight. In State v. Ross, 49 S.W.3d 833, 848 (Tenn. 2001), our supreme court concluded that application of this mitigating factor "focuses not on the circumstances of the crime committed" but "upon the defendant's *conduct* in committing the crime." Thus, the factor was applicable to a defendant who constructively possessed a controlled substance, which was located in a room several doors down from that in which officers found the defendant. However, the court further explained that, had the defendant sold or attempted to sell the drug at the time of the offense, "then the dangerous nature of the drug, combined with the dangerous nature of many drug transactions, may have indeed supported the trial court's rejection of this factor as constituting a threat of serious bodily injury." Id.

In a case involving the sale of another Schedule II controlled substance, cocaine, this court wrote:

> Inherent within the trafficking and distribution of drugs is the potential for serious bodily injury. Although we recognize that not all drug deals involve violence, we do, however, recognize that the very nature of the act makes the potential for serious bodily injury ever present. Accordingly, we find that the sale of cocaine is not so sufficiently free from all danger such that it can be used to mitigate a seller's sentence.

State v. Holston, 94 S.W.3d 507, 512 (Tenn. Crim. App. 2002) (citing State v. Vanderford, 980 S.W.2d 390, 407 (Tenn. Crim. App. 1997)). In view of the fact that this case involved the defendant's selling a controlled substance, application of mitigating factor (1) was not warranted. Furthermore, even if applicable, it was entitled to very little, if any, weight. In sum, we conclude that the enhancement factors that were appropriately applied, combined with the absence of any meaningful mitigating factors, justify the nine-year sentence. Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE