IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2016

## WILLIE GATEWOOD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-05288    Chris Craft, Judge
_____

**No. W2015-02480-CCA-R3-PC  -  Filed February 17, 2017**
_____

Petitioner, Willie Gatewood, appeals the denial of his petition for post-conviction relief. He argues that his trial counsel provided ineffective assistance (1) by not filing a motion to suppress the results of a photographic identification by the victim, (2) by not filing a motion to suppress the results of a warrantless search of Petitioner's cellphone, and (3) by various failures during trial preparation. Because Petitioner has failed to prove his claims by clear and convincing evidence, the decision of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Carolyn R. Sutherland, Memphis, Tennessee, for the appellant, Willie Gatewood.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Carla Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Procedural History and Factual Summary*

A Shelby County jury convicted Petitioner as charged of attempted first-degree murder and aggravated burglary. At trial, the evidence established that the victim returned to his home during his lunch break. He observed an unfamiliar vehicle in his driveway with the engine running and the driver's side door open. The victim also observed that the front door of his home had been forced open. The victim turned off the

foreign vehicle and removed the keys, a pair of glasses, and a cellphone from the vehicle. As the victim approached his home, he saw a stranger exiting the front door. The victim inquired about the stranger's purpose, and the stranger pulled out a gun. The stranger demanded the return of his automobile keys and threatened to shoot the victim. When the victim cried for help, the stranger shot him. The bullet went through the victim's hand and hit him in the chest. The stranger retrieved his keys, but not his cellphone, and fled the scene. The cellphone was later traced to Petitioner, and Petitioner owned a vehicle matching the description of the one the victim had seen earlier in his driveway. While being treated at the hospital, the victim identified Petitioner as the perpetrator in two different photographic lineups. Jewelry belonging to the victim's wife was missing from the house. After being convicted, Petitioner received an effective sentence of sixty-eight years. Presented only with a challenge to the sufficiency of the evidence, this Court affirmed the convictions on direct appeal. *State v. Willie Gatewood*, No. W2012-02563-CCA-R3-CD, 2013 WL 6145808, at *1-3 (Tenn. Crim. App. Nov. 21, 2013).

On November 20, 2014, Petitioner filed a pro se petition for post-conviction relief, alleging numerous grounds for ineffective assistance of counsel. The post-conviction court appointed post-conviction counsel and held an evidentiary hearing. After the hearing, the court denied the petition, and Petitioner timely filed a notice of appeal.

*Analysis*

Petitioner argues that the post-conviction court erred by denying his petition for post-conviction relief because the evidence presented at the hearing established that Petitioner's trial counsel provided ineffective assistance by (1) failing to file a motion to suppress the victim's identification made pursuant to a suggestive photographic lineup, (2) failing to file a motion to suppress the evidence obtained from a warrantless search of Petitioner's cellphone, and (3) failing to adequately meet with Petitioner or prepare for trial.[1] The State maintains that the post-conviction court properly denied relief because Petitioner failed to prove by clear and convincing evidence that he received ineffective assistance of counsel.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). On appeal, this Court will review the post-conviction court's

---

[1] These are the only issues pursued on appeal by Petitioner. Any other issues raised in the post-conviction court but not pursued before this Court are considered abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

## A. *Photographic Identification*

Petitioner argues that trial counsel was ineffective for failing to challenge the photographic lineups as unduly suggestive because Petitioner was the only person included in both of the lineups, albeit in different photographs, that were shown to the victim. To avoid exclusion from trial, "an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." *State v. Cribbs*, 967 S.W.2d 773, 794 (Tenn. 1998) (citing *Simmons v. United States*, 390 U.S. 377 (1968)). Nonetheless, an identification that is made pursuant to a procedure that is conducted in an impermissibly suggestive manner will not be excluded if the witness's identification was reliable under the circumstances. *State v. Philpott*, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). Courts use a multi-factor inquiry to determine reliability, which includes "the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention at the time of the crime; the accuracy of the witness's prior description; the level of certainty demonstrated at the confrontation; [and] the time elapsed between the crime and the confrontation." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)) (internal numbering omitted). At a suppression hearing, the findings of fact made by the trial court are binding on appellate review, unless the defendant makes a showing that the evidence contained in the record preponderates against them. *State v. Reid*, 213 S.W.3d 792, 825 (Tenn. 2006) (citations omitted).

The opinion in the direct appeal provided the following facts about the photographic lineups:

> The victim testified that he spoke to sheriff's deputies at the hospital, and they asked him to look at a photographic lineup to attempt to identify the man who burglarized his house. The victim said he made an identification, placed his signature at the bottom of the lineup, and wrote the word "maybe" underneath. He stated that the reason he wrote "maybe" was because he did not remember the shooter's hair being as long as it was in the photograph he identified. Sheriff's deputies asked the victim to look at a second photographic lineup, and the victim identified a different

photograph of the same person. He stated he was more sure of this photograph, because it was "more closely to what [Petitioner] looked like" at the time of the burglary. The victim testified that he had identified [Petitioner] in the preliminary hearing as the man who shot him.

. . . .

[On cross-examination, t]he victim reiterated that his uncertainty related to the identification in the first photographic lineup was due to [Petitioner's] hair and that the victim "didn't realize [Petitioner's] hair was that long[.]" He explained that [Petitioner's] hair "appeared to be shorter whenever he was coming out of [the victim's] house."

. . . .

Detective Jason Valentine testified that he showed the victim a photographic lineup at the hospital and that the victim identified one photograph and wrote under it, "May be the guy, this could possibly be the guy . . . that shot me." Detective Valentine testified that the victim was not one hundred percent certain that the photograph he had identified was the man who shot him but that "he felt pretty certain" his identification was correct. Detective Valentine stated that he showed the victim a second photographic lineup and that the victim made a "[o]ne hundred percent" identification of one photograph and said, "This is the person." Detective Valentine testified that the two photographs the victim had identified were the same person and that person was [Petitioner].

*Willie Gatewood*, 2013 WL 6145808, at *2-3.

At the post-conviction hearing, trial counsel confirmed the facts above and stated that the victim identified Petitioner at the preliminary hearing and at the trial. Petitioner entered into evidence a transcript of the preliminary hearing, which reflected that the victim identified Petitioner. Trial counsel said that the evidence of Petitioner's identity was very strong. Aside from the victim's identification, the State also had evidence of one of Petitioner's relatives attempting to change the name on the title of Petitioner's vehicle after the burglary. Trial counsel's strategy was to go for a lesser included offense on the attempted first-degree murder rather than to argue misidentification. Trial counsel also explained that he thought that the identification procedure was not suggestive and that a motion to suppress would be frivolous. The post-conviction court concluded that the lineup procedure was neither suggestive nor unreliable.

We conclude that trial counsel's decision not to file a motion to suppress the identification was a tactical decision entitled to deference. Trial counsel considered filing the motion but determined that it had no merit. Moreover, he decided to pursue an alternative strategy because, even if the identification had been excluded, there was still other evidence that Petitioner was the perpetrator.

Furthermore, we also agree with the post-conviction court that a motion to suppress the identification would have been unsuccessful. Petitioner correctly maintains that the recurrence of a suspect's photograph among a group of photographs shown to a witness might be suggestive depending on the circumstances, *see Simmons v. United States*, 390 U.S. 377, 383 (1968) ("This danger [of incorrect identification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is some way emphasized."); however, we need not decide whether the procedure in this case was suggestive because it was nonetheless reliable under the *Biggers* factors. The victim clearly observed his attacker during the middle of the day and had more than a brief encounter with him. The victim gave an accurate and detailed description of the attacker and his vehicle. The photographic lineups were presented to the victim shortly after the crime occurred, and the victim made a fairly confident identification in the first lineup while providing a sound explanation as to why he was not absolutely certain based upon specific details about Petitioner's appearance. Petitioner is not entitled to relief on this basis.

## B. Search of Cellphone

Defendant argues that trial counsel was ineffective by failing to file a motion to suppress evidence obtained from the warrantless search of his cellphone. The State contends that no search warrant was required because Petitioner abandoned the cellphone at the scene of the crime or, alternatively, that exigent circumstances justified the warrantless search.

In this case, the victim removed Petitioner's automobile keys and cellphone from Petitioner's vehicle without Petitioner's consent. After the shooting, Petitioner retrieved his keys but left the cellphone in the victim's possession. When the police arrived, the victim gave the cellphone to police. An officer "was able to identify the cellular phone by its serial number, as well as the phone number associated with the phone." The officer then "ran the phone number through the police department's public records system and . . . the Motor Vehicle Registration database indicated that the phone number was registered with [Petitioner]'s vehicle." The affidavit of complaint, admitted into evidence at the evidentiary hearing, states that the officer needed to remove the cellphone's battery to view the cellphone's identification number. "[T]he call log and text messages were

scanned [by the officer] to preserve them from being lost after the battery was removed." This review revealed the number of the cellphone.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

An exception to the warrant requirement exists for exigent circumstances. *State v. Reynolds*, 504 S.W.3d 283, 304 (Tenn. 2015) (citing *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978)).

> Exigent circumstances are those in which the urgent need for immediate action becomes too compelling to impose upon governmental actors the attendant delay that accompanies obtaining a warrant. Thus, in assessing the constitutionality of a warrantless search, the inquiry is whether the circumstances give rise to an objectively reasonable belief that there was a compelling need to act and insufficient time to obtain a warrant. The exigency of the circumstances is evaluated based upon the totality of the circumstances known to the governmental actor at the time of the [search]. Mere speculation is inadequate; rather, the State must rely upon specific and articulable facts and the reasonable inferences drawn from them. The circumstances are viewed from an objective perspective; the governmental actor's subjective intent is irrelevant. The manner and the scope of the search must be reasonably attuned to the exigent circumstances that justified the warrantless search, or the search will exceed the bounds authorized by exigency alone. Where the asserted ground of exigency is risk to the safety of the officers or others, the governmental actors must have an objectively reasonable basis for concluding that there is an immediate need to act to protect themselves and others from serious harm.

*State v. Meeks*, 262 S.W.3d 710, 723-24 (Tenn. 2008) (footnotes omitted).

However, Fourth Amendment protection only extends as far as one's reasonable expectation of privacy. *See State v. Ross*, 49 S.W.3d 833, 840 (Tenn. 2001). As such, a warrantless search of property in which one does not possess a reasonable expectation of privacy is constitutionally permissible and no amount of cause or suspicion is required.

*Id.* at 839. A person does not maintain a reasonable expectation of privacy in abandoned property. *See California v. Greenwood*, 486 U.S. 35, 39-41 (1988); *Abel v. United States*, 362 U.S. 217, 241 (1960). For purposes of the Fourth Amendment, whether property is considered abandoned depends "on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search." *State v. Ledford*, 438 S.W.3d 543, 553 (Tenn. Crim. App. 2014) (quoting *United States v. Veatch*, 674 F.2d 1217, 1220-21 (9th Cir. 1981)); *see also Ross*, 49 S.W.3d at 842 (stating that "'abandonment' here may be shown 'merely [by] an intent voluntarily to relinquish [a] privacy interest'" (alterations in original) (quoting *United States v. Barlow*, 17 F.3d 85, 87-88 (5th Cir. 1994))).

As this Court has previously explained:

It is well settled that when a Petitioner in post-conviction proceedings asserts that counsel rendered ineffective assistance of counsel by failing to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the post-conviction hearing; otherwise Petitioner asks the Court to grant relief based upon mere speculation. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. 1990). The same standard applies when a Petitioner argues that trial counsel was constitutionally ineffective by failing to file pre-trial motions to suppress evidence. . . . In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing. On issues such as the ones in the case *sub judice*, it is likely a rare occasion indeed when the testimony of only the Petitioner and the trial counsel could provide proof of the merit of a suppression motion based upon a warrantless search.

*Keven Scott v. State*, No. W2010-02515-CCA-R3-PC, 2011 WL 5903933, at *10 (Tenn. Crim. App. Nov. 22, 2011) (quoting *Terrance Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011)), *perm. app. denied* (Tenn. Apr. 12, 2012).

From the record before us, we cannot determine the likelihood of success for a motion to suppress the search of Petitioner's cellphone. At the evidentiary hearing, only trial counsel and Petitioner testified. Trial counsel testified that he believed such a motion would have been "frivolous." Petitioner did not present any proof to contradict this testimony because a suppression hearing was not litigated at the post-conviction evidentiary hearing.

Having reviewed the record from Petitioner's direct appeal, it is silent as to the location of Petitioner's cellphone once removed from his vehicle. By the time the police

arrived at the scene of the crime, the victim had moved the cellphone to his porch; however, no testimony or other evidence addresses where the cellphone was while Petitioner shot the victim, retrieved his automobile keys, and fled. Thus, we cannot determine whether Petitioner abandoned his expectation of privacy in the cellphone when he left the crime scene because we do not know if he knew the victim had taken the cellphone in the first place.[2]

Similarly, we cannot determine whether the search of the cellphone was justified by exigent circumstances. Petitioner did not call any of the law enforcement officers to testify about the circumstances surrounding the search of the cellphone. Trial testimony on this matter was limited because the issue was not contested, and the affidavit of complaint entered into evidence during the evidentiary hearing is not enough to address the issue.

On the record before us, Petitioner has failed to carry his burden of proving by clear and convincing evidence that trial counsel provided ineffective assistance by failing to file a motion to suppress a search of his cellphone because Petitioner did not prove that a motion to suppress would have been successful.

### C. Trial Preparations

Petitioner also asserts that trial counsel provided ineffective assistance by failing to adequately prepare a defense, failing to adequately communicate with Petitioner, and failing to prepare Petitioner to testify at trial.

Trial counsel testified that he had been a defense attorney for twenty-six years and had tried between 100 and 125 cases. He met with Petitioner six times, some of those at the courthouse, and wrote five letters to Petitioner about various issues regarding his case. Trial counsel filed several standard pre-trial motions and felt that he was adequately prepared for trial. Petitioner testified that trial counsel only visited him twice and did not do anything Petitioner asked him to do. He claims that trial counsel would not discuss the case or trial strategy.

Because the evidence of Petitioner's presence at the crime scene was very strong, trial counsel's primary strategy was to seek conviction on the lesser included offenses, particularly by arguing that there was no intent to kill. Contrary to trial counsel's strategy, Petitioner decided to testify in his defense and argued that he was at the crime scene but that someone else shot the victim. This account was incredible and rejected by

---

[2] *But cf. United States v. Quashie*, 162 F. Supp. 3d 135, 140-42 (E.D.N.Y. 2016) (holding that officer's warrantless search of a cellphone for the limited purpose of identifying the phone's number was not unconstitutional given that the phone was left by burglars at the crime scene and turned over to police by the victim).

the jury. Petitioner felt that trial counsel did not help Petitioner fully explain his story to the jury, and Petitioner became confused during his trial testimony.

Petitioner felt that there was significant inconsistency between the medical evidence and the victim's testimony about how he was shot, but trial counsel did not believe there was a problem. Accordingly, trial counsel did not seek an expert's opinion on ballistics. Petitioner maintained that an expert on bullet trajectory could have discounted the victim's testimony about the shooting.

The post-conviction court determined that trial counsel presented the best defense theory possible and noted that Petitioner had not presented a reasonable alternative strategy. The court also found that trial counsel did not obstruct Petitioner's ability to testify at trial. The court found that Petitioner's claim about potential expert testimony failed because Petitioner had not presented expert testimony at the evidentiary hearing.

The post-conviction court's ruling is sound. Petitioner did not present clear and convincing evidence of either deficient performance or prejudice on any of his claims. We will not revisit the post-conviction court's credibility determinations, and we find that deference to trial counsel's choice of trial strategy is warranted. As noted by the court below, Petitioner's claim about expert opinion testimony necessarily fails because he did not present the allegedly favorable testimony at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990).

*Conclusion*

Based on the foregoing, the decision of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE